UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARITA K.,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

_____

21-CV-00592-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12)

Plaintiff Marita K.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 7) is granted, and defendant's motion (Dkt. No. 8) is denied.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB on March 26, 2018, with an alleged onset date of September 30, 2014. (Administrative Transcript ["Tr."] 12, 169-70). Plaintiff later amended the alleged onset date to October 18, 2017. (Tr. 45). The application was initially denied on June 28, 2018. (Tr. 81, 85-96). Plaintiff timely filed a request for an administrative hearing. (Tr. 97-113). On January 24, 2020, Administrative Law Judge ("ALJ") Gregory Moldafsky held a video hearing from Falls Church, Virginia. (Tr. 41-66). Plaintiff appeared in Buffalo, New York, with counsel. A vocational expert also appeared at the hearing. The ALJ issued an unfavorable decision on August 26, 2020, and an amended decision on August 31, 2020. (Tr. 9-21). On March 8, 2021, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.*

§§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

Preliminarily, the ALJ found that Plaintiff's last date insured is December 31, 2020. (Tr. 14). At the first step of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 18, 2017, the amended alleged onset date. (Tr. 14). Next, at step two, the ALJ determined that Plaintiff has the following severe impairments: cervical degenerative disc disease post-laminectomy syndrome; cervical spondylosis and radiculopathy status post cervical fusion and discectomy; cervicogenic headaches; and history of right shoulder arthroscopic surgery. (Tr. 14-15). Next, at step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15). Before proceeding to step four of the sequential evaluation, the ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except "[s]he can only occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, balance, kneel, and crouch; never crawl; can perform no more than

occasional reaching with the bilateral upper extremities and frequent hand[l]ing with the right upper extremity; and never work at unprotected heights." (Tr. 15-20).

At step four of the sequential evaluation, the ALJ found that Plaintiff can perform her past relevant work. (Tr. 20). Additionally, in the alternative, at step five of the sequential evaluation, the ALJ determined that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (Tr. 20-21). Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (Tr. 21).

IV. *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because the ALJ failed to reconcile discrepancies between his RFC assessment and certain limitations contained in the medical opinion evidence upon which he relied. The Court agrees.

Generally, an ALJ must "reconcile discrepancies between [his] RFC assessment and medical source statements." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). When the RFC conflicts with a medical opinion, an ALJ must "explain why the opinion was not adopted." *Id.* While an "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot simply selectively choose evidence in the record that supports his conclusions." *Id.*; *see also Caternolo v. Astrue*, 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (internal quotations omitted). Indeed, "[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'" *Dioguardi*, 445 F. Supp. 2d at 297 (quoting SSR 96-8p, 1996 WL 374184 (S.S.A. 1996)).

"Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions." *Dotson v. Berryhill*, 2018 WL 3064195, at *3 (W.D.N.Y. June 21, 2018) (remanding when ALJ accepted a portion of a medical source statement, but ignored the specific limitations); *see also Renee M. B. v. Comm'r of Soc. Sec.*, 2021 WL 716704, at *7 (W.D.N.Y. Feb. 24, 2021) (remanding where ALJ "appeared to incorporate some ... limitations and their severity, but not others, into the RFC, with no explanation" because "her failure to explain her reasoning was a legal error"). Failure to provide an explanation requires remand. *See, e.g.*, *Lawrence v. Comm'r of Soc. Sec.*, 2018 WL 4509490, at *8 (N.D.N.Y. Sept. 18, 2018) ("[T]he ALJ's failure to explain why he chose not to incorporate certain limitations set forth in the medical source statement despite explicitly affording great weight to Dr. Long's opinion leaves the ALJ's otherwise thorough decision lacking the clarity necessary to enable this Court to determine whether the ALJ's findings are supported by substantial evidence.").

Here, in forming Plaintiff's RFC, the ALJ found the medical opinions of consultative examiner Dr. Nikita Dave, M.D., and Occupational Therapist Registered ("OTR") Jennifer Gula persuasive, yet failed to include critical limitations from those opinions in the RFC or explain their absence. Dr. Dave opined that Plaintiff had "mild to moderate limitations for repetitive bending, twisting through the cervical spine, and more moderate for lifting, carrying, pushing, and pulling of heavy objects or maintaining a non-neutral spine position for prolonged periods of time" and had "moderate limitations for repetitive reaching overhead with the right shoulder and repetitive gross motor manipulation." (Tr.862). Dr. Dave also opined that Plaintiff "may benefit from rest intervals to rest the head and neck."

*Id.* The ALJ did not include the rest period limitation in the RFC determination, nor did he explain why he omitted it.

On March 13, 2019, Plaintiff underwent a functional capacity evaluation ("FCE") performed by OTR Gula. (Tr. 1096-1100). On exam, OTR Gula noted that Plaintiff displayed reduced right shoulder range of motion. (Tr.1096). Plaintiff also had "frequent complaints and physical signs of neck and right arm discomfort during [the FCE]." (Tr.1097). Plaintiff had to take breaks using her hand and reported that it was "freezing." *Id.* The FCE included a detailed list of specific evaluations and results. (Tr.1099-1100). Among those findings, OTR Gula wrote that Plaintiff showed "signs of increased neck discomfort with [left hand grip] repetition." (Tr.1099). The same was true of Plaintiff's right-hand grip. *Id.* OTR Gula noted that "[a]s the evaluation progressed, [Plaintiff's] right hand and forearm became red in color and colder to the touch when compared to her left hand." (Tr.1096).

OTR Gula included many specific opinions in the FCE. Among the more pertinent were the opinions that Plaintiff should avoid repetitive *bilateral* gripping and repetitive right fine motor activity. (Tr.1098). OTR Gula also opined that Plaintiff would only be able to perform a job that "would not require repetitive right (dominant) hand use." (Tr.1096). She further opined that Plaintiff's left-hand grip was below average and that she should take breaks as needed. (Tr. 1098). While not clearly stated, it appears that OTR Gula also found that the Plaintiff should avoid repetitive left-hand use. (Tr. 1098). The ALJ did not include any type of limitation regarding Plaintiff's left hand in his RFC determination, nor did he explain why.

The ALJ's failure to explain his omission from the RFC determination of some of the limitations posited by Dr. Dave and OTR Gula breached the duty of explanation that the ALJ owed to Plaintiff. *See Reider v. Colvin*, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (noting that the claimant is entitled to have the ALJ "explain any rejection of the limitations assessed in [a medical source's] opinion"). Importantly, even if the ALJ was entitled to reject portions of Dr. Dave and OTR Gula's opinions, without sufficient explanation, such rejection is an error in and of itself that warrants remand. *See Renee M. B.*, 2021 WL 716704, at *7 ("Even if ALJ Smith was entitled to [reject portions of opinion evidence], her failure to explain her reasoning was a legal error.").

Therefore, so that the ALJ may provide the requisite explanation or properly incorporate Dr. Dave and OTR Gula's opinions into the RFC, remand is appropriate. *See Mack v. Comm'r of Soc. Sec.*, 2019 WL 2529386, at *5 (W.D.N.Y. June 19, 2019) ("Remand is especially appropriate where, as here, the ALJ gave Dr. Siddiqui's and Dr. Siaws's opinions 'considerable weight,' but failed to provide an explanation for not incorporating into the RFC their [limitations].").[3]

## **CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is granted and defendant's motion for judgment on the pleadings (Dkt. No.8) is denied. The case is remanded for further administrative proceedings.

---

[3] The defendant puts forth several *post hoc* rationalizations in support of the ALJ's decision, but none of these explanations are in the ALJ's decision. "Defendant's after-the-fact explanation as to why the ALJ rejected [the opinions] cannot serve as a substitute for the ALJ's findings." *Merkel v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 241, 249 (W.D.N.Y. 2018) (brackets added) (citing *Hall v. Colvin*, 37 F.Supp.3d 614, 626 (W.D.N.Y. 2014)).

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   August 21, 2023
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge